IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD F. LOCHBAUM, <br>         Plaintiff, <br><br> v. <br><br> TOLLOS, INC. and THERESA STEWART, <br>         Defendants. | C.A. No. 19-384 Erie <br><br> District Judge Susan Paradise Baxter |

# MEMORANDUM OPINION

## I.   INTRODUCTION

### A.   Relevant Procedural History

Plaintiff Donald F. Lochbaum initiated the present action on November 20, 2019, by filing a complaint against Defendants Tollos, Inc. ("Tollos") and Theresa Stewart ("Stewart"), in the Court of Common Pleas of Erie County, Pennsylvania [ECF No. 1-1]. The action was subsequently removed to this Court pursuant to a Notice of Removal filed by Defendants on December 31, 2019 [ECF No. 1].

Plaintiff alleges that Defendants owe him unpaid commissions that he claims to have earned while he was employed as Tollos's installation manager prior to April 19, 2018. The complaint contains three counts: Count I is a claim under Pennsylvania's Wage Payment Collection Act 43 Pa. C.S. §§ 260.1, *et seq.* ("WPCL"); Count II is a claim of breach of contract; and Count III is a claim of unjust enrichment. Discovery in this matter was closed on June 30, 2021.

On November 15, 2021, the parties filed cross motions for summary judgment [ECF Nos. 36, 40], which have been fully briefed. This matter is now ripe for consideration.

1

B.  **Relevant Factual History**[1]

Plaintiff was employed by Tollos as installation manager during the majority of Tollos's Fiscal Year 2018, which runs from August 1 through July 31 (ECF No. 38 at ¶¶ 1, 24). Stewart became employed by Tollos as Chief Commercial Officer ("CCO") on or about November 13, 2017 (Id. at ¶ 10). As CCO, Stewart collaborated with the CEO to determine compensation and commissions for Tollos employees. (Id. at ¶ 11). Under the Tollos Sales Plan Overview for Fiscal Year 2018, Plaintiff's commissions were calculated as follows: "1% on all ceiling lift sales excluding installation" and "[3% on] direct ceiling lift sales identified on matrix as such" (Id. at ¶ 9). Tollos's sales manager, Anthony Febbraro ("Febbraro"), was responsible for the calculation of commissions when Plaintiff was installation manager (Id. at ¶ 3). Sales reps are paid commissions when the installation on the project is complete and the revenue is recognized (Id. at ¶ 43).

In or around April 2018, Plaintiff was transitioned from the position of installation manager to the position of Senior Account Manager (Id. at ¶¶ 15, 18). On or about April 19, 2018, Stewart sent an unsigned letter (the "Letter") to Plaintiff setting forth the terms of Plaintiff's new role as Senior Account Manager, including his salary, Fiscal Year ("FY") 2018 Compensation Plan, and a Bonus Table (Id. at ¶¶ 22, 23; ECF No. 39-5). The plan presented to Plaintiff in April 2018 represented his compensation structure for the remainder of Fiscal Year 2018, through July 31, 2018 (Id. at ¶ 25). The FY 2018 Compensation Plan included, among other things, "Commission Rates: 2.5% on net sales from 0% to 100% of assigned annual quota; 5% on net sales above 100% of assigned annual quota" (Id. at ¶ 28). The Letter did not include

---

[1] The factual history set forth herein has been gleaned from Defendants' concise statement of material facts [ECF No. 38], but only to the extent such facts are unopposed and/or amply supported by the evidence of record.

any reference to commissions payable on projects listed on an "executable backlog" as of April 15, 2018 (Id. at ¶ 29). On or about June 26, 2018, Plaintiff signed and initialed the Letter after adding a single line to the FY 2018 Compensation Plan, stating "Commission Rates: 3% on all projects listed on the executable backlog as of April 15, 2018" (Id. at ¶ 32; ECF No. 39-6, at p. 6).

On or about September 6, 2018, Stewart sent Plaintiff the FY 2019 Sales Compensation Plan, which contained the same commission rates noted in the original Letter of April 9, 2018: "2.5% on net sales from 0% to 100% of assigned annual quota; 5% on net sales above 100% of assigned annual quota" (Id. at ¶ 38). The FY 2019 compensation plan did not include any reference to a 3% commission on an "executable backlog" (Id. at ¶ 40).

From the beginning of her employment with Tollos, Stewart had daily interactions with Plaintiff, during which Plaintiff regularly stated that Tollos owed him money for commissions (Id. at ¶ 47). Plaintiff also told his immediate supervisor, Sue Hart ("Hart") that he was owed commissions (Id. at ¶ 49). On September 10, 2018, Stewart sent an email to Greg Hodge ("Hodge"), Operations, asking whether there were any outstanding commissions owed to Plaintiff as of April 15, 2018 (Id. at ¶ 53; ECF No. 39-4 at p. 5). Hodge responded that Plaintiff was "up to date on commissions in his former role" (Id. at ¶ 54; ECF No. 39-4 at p. 6).

On September 3, 2019, Tollos, including Stewart, hosted a call with its three sales reps, including Plaintiff, and explained that Tollos could only retain one sales rep, and that each of them was encouraged to apply for the position by September 6, 2019 (Id. at ¶ 57). Plaintiff did not apply for the position and, as a result, his employment with Tollos ended on September 6, 2019 (Id. at ¶¶ 58, 59). After Plaintiff's employment ended, he created a document reflecting commissions he believes Tollos owes him, totaling $85,887.04 (Id. at ¶ 60; ECF No. 5-2).

3

## II. DISCUSSION

The crux of Plaintiff's claims in this case revolves around whether Plaintiff is entitled to receive commissions on sales of projects that were initiated while Plaintiff was employed as installation manager in FY 2018, but not completed until sometime after he was transitioned to the position of Senior Account Manager in April 2018. Plaintiff claims that he became entitled to receive commissions on these projects upon their completion, even after he was moved to his new position. Though it is undisputed that, in FY 2018, sales reps were not paid commissions until installation on a project was complete and revenue was recognized (ECF Nos. 38 and 42, at ¶ 43), there remain several genuine issues of material fact as to whether Plaintiff is owed any remaining commissions stemming from his employment as installation manager. In particular, the Court notes the following:

(1) Defendants state that, while Plaintiff was installation manager, Febbraro was the employee primarily responsible for all of the ceiling lift sales for which Plaintiff is claiming commissions (ECF No. 38 at ¶¶ 2, 4-5). This fact is disputed by Plaintiff, who states that sales were a collaborative effort between him and Febbraro while Plaintiff was installation manager (ECF No. 42, at ¶¶ 2, 4-5);

(2) Plaintiff states that he accepted the new position as Senior Account Manager based on the understanding that he would receive payment for commissions he had earned as installation manager, and that he made Stewart aware of this (ECF No. 42, at ¶¶ 15, 48, 62). According to Plaintiff, Stewart instructed Plaintiff to add language to the April 19, 2018 Letter to reflect his right to receive a 3% commission "on all projects listed on the executable backlog as of April 15, 2018," which he did on the amended Letter he signed and initialed on June 26, 2018 (ECF No. 42, at ¶¶ 32-33). These facts are

4

disputed by Defendants. Specifically, Defendants deny that Plaintiff discussed the added commission language with anyone at Tollos; Stewart denies ever receiving the Letter with the added commission language from Plaintiff; Defendants state that the "executable backlog" is not a document used to calculate commissions; and Defendants stress that the Letter, as amended, was never signed by anyone at Tollos (ECF No. 38, at ¶¶ 33-35, 46);

(3) Stewart claims that from the beginning of her employment with Tollos, she regularly asked Plaintiff to provide her with documentation of the commissions he believed he was owed by Tollos, but he never did so (ECF No. 38, at ¶¶ 47, 49-50, 52). Plaintiff counters that he was never asked for supporting documentation until the last day of his employment with Tollos (ECF No. 42, at ¶¶ 47, 49), and that he specifically asked Stewart about his commissions "on the executable backlog," in response to which she always responded that "she would talk to Bill" (Id. at ¶ 48, 62). Plaintiff further disputes that he was unable to provide documentation to support his claim for commissions, specifically pointing to the document he provided to Defendants at the end of his employment [ECF No. 5-2], which mirrors Tollos' "Ceiling Lift Backlog Detail" that lists projects that were initiated during FY 2018 while Plaintiff was installation manager and remained in progress when he became Senior Account Manager [ECF No. 42-2]; and

(4) Defendants state that Stewart obtained from Hodge confirmation that Plaintiff was paid in full for all commissions owed from August 17, 2017 until Plaintiff assumed the position of Senior Account Manager in April 2018 (ECF No. 38, at ¶¶ 53-55). Plaintiff counters, however, that Hodge only accounted for commissions that were owed as of April 15, 2018, and did not account for projects that were unfinished as of

such date, on which commissions would later become due upon completion. (ECF No. 42, at ¶ 54).

## III.  CONCLUSION

The majority, if not all, of the foregoing factual disputes are material to the principal issues to be resolved in this case. These factual disputes primarily involve credibility issues that the Court cannot resolve as a matter of law. Further complicating this matter is the fact that there appears to be confusion among the parties regarding the contract language at issue. While much time is spent by the parties disagreeing over the contours of the Letter agreement of April 19, 2018, which was subsequently amended by Plaintiff and never fully signed by the parties, it appears to the Court that the actual dispute in this case centers on Plaintiff's entitlement to commissions that may or may not be due under the Tollos Sales Plan Overview for Fiscal Year 2018 that was in effect during Plaintiff's employment as installation manager. This dispute cannot be resolved at the summary judgment stage due to the above-referenced disputed issues of material fact. As a result, both cross motions will be denied.

An appropriate Order follows.